UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONEL DAVIDSON, Derivatively on Behalf of DICK'S SPORTING GOODS, INC., | Case No. |
| Plaintiff, | |
| v. | |
| LAUREN R. HOBART, EDWARD W. STACK, NAVDEEP GUPTA, WILLIAM J. COLOMBO, LAWRENCE J. SCHORR, EMANUEL CHIRICO, LARRY D. STONE, MARK J. BARRENECHEA, ANNE FINK, LARRY FITZGERALD, JR., SANDEEP MATHRANI, and DESIREE RALLS-MORRISON, | |
| Defendants, | |
| -and- | |
| DICK'S SPORTING GOODS, INC., a Delaware Corporation, | |
| Nominal Defendant. | DEMAND FOR JURY TRIAL |

**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF SECURITIES LAW, BREACH OF FIDUCIARY DUTY, AND UNJUST ENRICHMENT**

Plaintiff, by his attorneys, submits this Verified Stockholder Derivative Complaint for Violation of Securities Law, Breach of Fiduciary Duty, and Unjust Enrichment. Plaintiff alleges the following on information and belief, except as to the allegations specifically pertaining to plaintiff which are based on personal knowledge. This complaint is also based on the investigation of plaintiff's counsel, which included, among other things, a review of public filings with the U.S. Securities and Exchange Commission ("SEC") and a review of news reports, press releases, and other publicly available sources.

## NATURE AND SUMMARY OF THE ACTION

1.    This is a stockholder derivative action brought by plaintiff on behalf of nominal defendant DICK'S Sporting Goods, Inc. ("Dick's Sporting Goods" or the "Company") against certain of its officers and directors for breaches of fiduciary duties and violations of law. These wrongs resulted in significant damages to Dick's Sporting Goods' reputation, goodwill, and standing in the business community, as well as exposing the Company to potential liability for violations of state and federal law.

2.    Dick's Sporting Goods, headquartered in Coraopolis, Pennsylvania, is the nation's largest sporting goods retailer. Dick's Sporting Goods' core product categories are hardlines, apparel, footwear, and other.[1]

3.    In 2020, during the Coronavirus Disease of 2019 ("COVID-19") pandemic, Dick's Sporting Goods experienced unprecedented sales driven by government stimulus checks and a consumer shift towards sporting and outdoor equipment. In an aggressive attempt to maximize

---

[1] Hardlines refer to tangible goods such as sporting goods equipment, fitness equipment, golf equipment, and fishing gear. Other includes non-merchandise sales categories, including in-store services, shipping and GameChanger (a youth sports mobile app) revenues.

revenue, Dick's Sporting Goods began pre-purchasing its inventory to meet the sudden surge in demand.

4.      However, as more COVID-19 restrictions were lifted, consumer demand began to wane. Dick's Sporting Goods struggled to move excess products that consumers no longer wanted. The Company's inventory position became unsustainable, materially impacting the Company's profitability.

5.      During this time, Dick's Sporting Goods was also struggling with elevated inventory "shrink," due to retail theft.[2] In 2022, inventory shrink became an alarming issue within the retail industry. In fact, according to the National Retail Federation, retail losses due to shrink increased by $18.2 billion in 2022, compared to 2021. With hundreds of locations nationwide, Dick's Sporting Goods was significantly impacted by the growing trend. The Company lost millions of dollars annually due to inventory shrink, which materially impacted its margins.

6.      Instead of promptly disclosing this material information to its investors, Dick's Sporting Goods continued to feed the public false assurances about the sustainability of its growth and profitability, keeping the Company's stock artificially inflated. Despite knowledge of these issues, Dick's Sporting Goods' fiduciaries caused the Company to spend over $356 million to repurchase 2,664,066 shares of its common stock at inflated prices. Also, due to their positions within Dick's Sporting Goods, certain directors and officers had insider knowledge regarding its business health. Exploiting the artificial inflation of the Company's stock prices caused by the unlawful activity detailed herein, these individuals sold $38.6 million worth of their personally held Company stock at inflated prices.

---

[2] In retail, shrink refers to the difference between recorded inventory and the actual number of products in stock.

7.    On August 22, 2023, Dick's Sporting Goods issued a press release announcing its financial results for the second quarter of fiscal 2023.  The press release reported the Company's gross margin fell more than 5% below the analyst consensus estimate.  Additionally, the Company's earnings per diluted share ("EPS") missed the analyst consensus estimate by 26%. Later that day, during an earnings call, Dick's Sporting Goods also admitted that shrinkage and markdowns to clear excess inventory were the primary drivers of the decline.

8.    In the wake of Dick's Sporting Goods' underperformance, the Company's stock plunged more than 24%, or $35.51 per share on August 22, 2023, to close at $111.53 per share compared to the previous trading day's closing of $147.04 per share, erasing nearly $2.2 billion in market capitalization.

9.    Further, as a direct result of this unlawful course of conduct, Dick's Sporting Goods is now the subject of a federal securities class action lawsuit filed in the U.S. District Court for the Western District of Pennsylvania on behalf of investors who purchased Dick's Sporting Goods shares, titled, *Plumbers and Pipefitters Local Union No. 719 Pension Trust Fund v. Dick's Sporting Goods, Inc., et al.*, 2:24-cv-00196-JNR-KT (the "Securities Class Action").

## JURISDICTION AND VENUE

10.    This Court has jurisdiction under 28 U.S.C. §1331 because certain of the claims asserted herein arise under section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 (17 C.F.R. §240.10b-5) promulgated thereunder by the SEC.  The Court has supplemental jurisdiction over the remaining claims asserted herein under 28 U.S.C. §1367(a).

11.    This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise

of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper in this Court in accordance with 28 U.S.C. §1391 because: (i) Dick's Sporting Goods maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## **<u>THE PARTIES</u>**

**Plaintiff**

13.     Plaintiff Donel Davidson was a stockholder of Dick's Sporting Goods at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current Dick's Sporting Goods stockholder.  Plaintiff has been a continuous stockholder of Dick's Sporting Goods, holding shares in two separate accounts.  He acquired Company stock in his first brokerage account on June 2, 2021, and subsequently sold them on November 6, 2024.  Prior to that sale, however, he had purchased Company stock in his second brokerage account on April 10, 2023, and continues to maintain those holdings in that account.

**Nominal Defendant**

14.     Nominal defendant Dick's Sporting Goods is a Delaware corporation with principal executive offices located at 345 Court Street, Coraopolis, Pennsylvania.  Dick's Sporting Goods is an omni-channel sporting goods retailer that offers sports equipment, apparel, footwear, and accessories.  As of February 3, 2024, the Company operated 724 Dick's Sporting Goods locations

within the United States.  Dick's Sporting Goods also owns and operates Golf Galaxy, Public Lands, Moosejaw, and Going Going Gone! specialty concept stores in addition to offering products online and through mobile applications.  As of February 3, 2024, Dick's Sporting Goods had approximately 18,900 full-time and 36,600 part-time employees, which the Company refers to as teammates.

**Defendants**

15.    Defendant Lauren R. Hobart ("Hobart") has been Dick's Sporting Goods' Chief Executive Officer ("CEO") since February 2021, President since May 2017, and a director since January 2018.  Defendant Hobart was also Dick's Sporting Goods' Chief Customer & Digital Officer from April 2017 to May 2017; Chief Marketing Officer from February 2011 to April 2017; Executive Vice President from September 2015 to April 2017; and Senior Vice President from February 2011 to September 2015.  Defendant Hobart is named as a defendant in the Securities Class Action that alleges she violated sections 10(b) and 20(a) of the Exchange Act.  While in possession of material, nonpublic information concerning Dick's Sporting Goods' true business health, defendant Hobart sold 83,392 shares of her personally held Company stock for $12,109,610.84 in proceeds.  Dick's Sporting Goods paid defendant Hobart the following compensation as an executive:

| Year | Salary | Stock Awards | Non-Equity Incentive Plan | Change in Pension & Nonqualified Deferred Comp | All Other Compensation | Total |
|---|---|---|---|---|---|---|
| 2023 | $1,305,769 | $9,750,307 | $2,285,096 | $200,000 | $34,054 | $13,575,226 |
| 2022 | $1,180,769 | $5,000,142 | $2,066,346 | $165,000 | $22,109 | $8,434,366 |

16.    Defendant Edward W. Stack ("Stack") has been Dick's Sporting Goods' Executive Chairman of the Board of Directors (the "Board") since February 2021 and a director since 1984.  Defendant Stack was also Dick's Sporting Goods' CEO and Chairman of the Board from 1984 to

February 2021. Defendant Stack is named as a defendant in the Securities Class Action that alleges he violated sections 10(b) and 20(a) of the Exchange Act. While in possession of material, nonpublic information concerning Dick's Sporting Goods' true business health, defendant Stack sold 159,461 shares of his personally held Company stock for $23,023,636.43 in proceeds. Dick's Sporting Goods paid defendant Stack the following compensation as an executive:

| Year | Salary | Stock Awards | Non-Equity Incentive Plan | Change in Pension & Nonqualified Deferred Comp | All Other Compensation | Total |
|------|--------|--------------|---------------------------|-----------------------------------------------|------------------------|-------|
| 2023 | $1,223,077 | $11,500,305 | $2,568,462 | $60,000 | $204,878 | $15,556,722 |
| 2022 | $1,180,769 | $7,500,112 | $2,479,615 | - | $89,106 | $11,249,602 |

17.     Defendant Navdeep Gupta ("Gupta") has been Dick's Sporting Goods' Executive Vice President, Chief Financial Officer since October 2021. Defendant Gupta was also Dick's Sporting Goods' Senior Vice President, Chief Accounting Officer from November 2017 to October 2021. Defendant Gupta is named as a defendant in the Securities Class Action that alleges he violated sections 10(b) and 20(a) of the Exchange Act. While in possession of material, nonpublic information concerning Dick's Sporting Goods' true business health, defendant Gupta sold 14,294 shares of his personally held Company stock for $1,947,448.24 in proceeds. Dick's Sporting Goods paid defendant Gupta the following compensation as an executive:

| Year | Salary | Stock Awards | Non-Equity Incentive Plan | Change in Pension & Nonqualified Deferred Comp | All Other Compensation | Total |
|------|--------|--------------|---------------------------|-----------------------------------------------|------------------------|-------|
| 2023 | $692,740 | $2,600,200 | $515,455 | $99,303 | $22,235 | $3,929,933 |
| 2022 | $588,933 | $875,101 | $412,253 | $124,456 | $21,805 | $2,022,548 |

18.     Defendant William J. Colombo ("Colombo") has been Dick's Sporting Goods' Vice-Chairman of the Board since February 2008 and a director since 2002. Defendant Colombo was also Dick's Sporting Goods' Interim Chief Marketing Officer from September 2010 to

February 2011; President from 2002 to February 2008; Chief Operating Officer from 2000 to February 2008, and also from 1995 to 1998; Executive Vice President from 2000 to 2002, and also from 1995 to 1998; and held various leadership roles from 1988 to 1995.  Defendant Colombo was also President of dsports.com LLC, the Company's internet commerce subsidiary, from 1998 to 2000.  Dick's Sporting Goods paid defendant Colombo the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2023 | $113,125 | $180,090 | $293,215 |
| 2022 | $92,500 | $160,029 | $252,529 |

19.     Defendant Lawrence J. Schorr ("Schorr") has been Dick's Sporting Goods' Lead Director since June 2011 and a director since 1985.  Dick's Sporting Goods paid defendant Schorr the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2023 | $165,000 | $180,090 | $345,090 |
| 2022 | $135,000 | $160,029 | $295,029 |

20.     Defendant Emanuel Chirico ("Chirico") has been a Dick's Sporting Goods director since December 2003.  Defendant Chirico has been a member of Dick's Sporting Goods' Audit Committee since at least May 2022.  Dick's Sporting Goods paid defendant Chirico the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2023 | $112,500 | $180,090 | $292,590 |
| 2022 | $90,000 | $160,029 | $250,029 |

21.     Defendant Larry D. Stone ("Stone") has been a Dick's Sporting Goods director since June 2007.  Dick's Sporting Goods paid defendant Stone the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|

| | | | |
|---|---|---|---|
| 2023 | $138,125 | $180,090 | $318,215 |
| 2022 | $117,500 | $160,029 | $277,529 |

22.    Defendant Mark J. Barrenechea ("Barrenechea") has been a Dick's Sporting Goods director since February 2014.  Defendant Barrenechea has been the Chair and a member of Dick's Sporting Goods' Audit Committee since at least May 2022.  While in possession of material, nonpublic information concerning Dick's Sporting Goods' true business health, defendant Barrenechea sold 9,085 shares of his personally held Company stock for $1,122,360.90 in proceeds.  Dick's Sporting Goods paid defendant Barrenechea the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2023 | $152,500 | $180,090 | $332,590 |
| 2022 | $130,000 | $160,029 | $290,029 |

23.    Defendant Anne Fink ("Fink") has been a Dick's Sporting Goods director since November 2019.  Defendant Fink was a member of Dick's Sporting Goods' Audit Committee from at least May 2022 to at least May 2023.  While in possession of material, nonpublic information concerning Dick's Sporting Goods' true business health, defendant Fink sold 3,174 shares of her personally held Company stock for $441,451.35 in proceeds.  Dick's Sporting Goods paid defendant Fink the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2023 | $118,125 | $180,090 | $298,215 |
| 2022 | $90,000 | $160,029 | $250,029 |

24.    Defendant Larry Fitzgerald, Jr. ("Fitzgerald") has been a Dick's Sporting Goods director since July 2020.  Dick's Sporting Goods paid defendant Fitzgerald the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|

| | | | |
|---|---|---|---|
| 2023 | $113,125 | $180,090 | $293,215 |
| 2022 | $92,500 | $160,029 | $252,529 |

25.     Defendant Sandeep Mathrani ("Mathrani") has been a Dick's Sporting Goods director since September 2020.  Defendant Mathrani has been a member of Dick's Sporting Goods' Audit Committee since at least May 2022.  Dick's Sporting Goods paid defendant Mathrani the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2023 | $112,500 | $180,090 | $292,590 |
| 2022 | $90,000 | $160,029 | $250,029 |

26.     Defendant Desiree Ralls-Morrison ("Ralls-Morrison") has been a Dick's Sporting Goods director since September 2020.  Defendant Ralls-Morrison has been a member of Dick's Sporting Goods' Audit Committee since at least May 2024.  Dick's Sporting Goods paid defendant Ralls-Morrison the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2023 | $113,125 | $180,090 | $293,215 |
| 2022 | $92,500 | $160,029 | $252,529 |

27.     The defendants identified in ¶¶15-17 are referred to herein as the "Officer Defendants."  The defendants identified in ¶¶15, 16, 18-26 are referred to herein as the "Director Defendants."  The defendants identified in ¶¶20, 22, 23, 25-26 are referred to herein as the "Audit Committee Defendants."  The defendants identified in ¶¶15-17, 22-23 are referred to herein as the "Insider Selling Defendants."  Collectively, the defendants identified in ¶¶15-26 are referred to herein as the "Individual Defendants."

## <u>DUTIES OF THE INDIVIDUAL DEFENDANTS</u>

**Fiduciary Duties**

28.     By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and owe Dick's Sporting Goods and its stockholders fiduciary obligations of care and loyalty, and were and are required to use their utmost ability to control and manage Dick's Sporting Goods in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Dick's Sporting Goods and not in furtherance of their personal interest or benefit.

29.     To discharge their duties, the officers and directors of Dick's Sporting Goods were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Dick's Sporting Goods were required to, among other things:

(a)     provide truthful and accurate information regarding Dick's Sporting Goods business operations and prospects;

(b)     conduct the affairs of the Company in an efficient, business-like manner in compliance with all applicable laws, rules, and regulations so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     prioritize the interests of Dick's Sporting Goods and its stockholders over their own personal financial interests;

(d)     prevent the Company from repurchasing its own common stock at prices known to be artificially inflated by misleading statements and omissions; and

(e)    remain informed as to how Dick's Sporting Goods conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws.

**Breaches of Duties**

30.    The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of Dick's Sporting Goods, the absence of good faith on their part, and a reckless disregard for their duties to the Company that the Individual Defendants were aware or reckless in not being aware posed a risk of serious injury to the Company.

31.    The Individual Defendants breached their duty of loyalty by allowing defendants to cause, or by themselves causing, the Company to make false and misleading statements and omissions of material facts that failed to disclose, *inter alia*, that: (i) Dick's Sporting Goods was struggling with excess inventory that would need to be moved through clearances and significant markdowns, which would materially impact the Company's margins; (ii) increased shrinkage, related to retail theft, was materially affecting the Company's margins; and (iii) the Company failed to maintain proper internal controls.

32.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of Dick's Sporting Goods, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.  The Individual Defendants also failed to prevent the other Individual Defendants from taking such wrongful actions.  The Individual Defendants used their knowledge of Dick's Sporting Goods' material and nonpublic information to sell millions of dollars' worth of their personal holdings, all while the price of the

Company's common stock was artificially inflated by their false and misleading statements. At the same time, the Director Defendants caused the Company to repurchase millions of shares of its own common stock, despite knowledge or reckless disregard concerning the Company's true business health. As a result, and in addition to the damage the Company has already incurred, Dick's Sporting Goods has expended, and will continue to expend, significant sums of money.

**Additional Duties of the Audit Committee Defendants**

33.     In addition to these duties, under its Charter in effect since June 15, 2022, the Audit Committee Defendants, defendants Chirico, Barrenechea, Fink, Mathrani, and Ralls-Morrison, owed specific duties to Dick's Sporting Goods to assist the Board in: (i) overseeing the integrity of the audit process, financial reporting, and internal accounting controls of the Company; (ii) overseeing the work of the Company's financial management and the internal auditors employed by the Company; (iii) overseeing the work of the independent registered public accounting firm employed by the Company for the purpose of preparing or issuing an audit report or related work, and the independence and qualifications of said outside auditors; (iv) overseeing management's development of, and adherence to, a sound system of internal accounting and financial controls; (v) ensuring that the internal auditors and the outside auditors objectively assess the Company's financial reporting, accounting practices, and internal controls; (vi) providing an open avenue of communication between the outside auditors, the internal auditors, and the Board; and (vii) overseeing management's development and adherence to guidelines and procedures for risk and compliance management, including with respect to financial matters, legal and compliance matters, data protection and cybersecurity risk, and environmental, social, and governance.

## <u>SUBSTANTIVE ALLEGATIONS</u>

**Dick's Sporting Goods Overstocks Products After Experiencing a Pandemic-Driven Surge in Profitability**

34.    Dick's Sporting Goods is a Delaware corporation with its principal executive offices located in Pennsylvania.  Richard "Dick" Stack originally founded the Company in 1948. In 1984, the founder's son, defendant Stack, stepped in as the Company's President and CEO. Dick's Sporting Goods is now a leading sporting goods retailer, operating stores nationwide and offering its products online and through its mobile app.  The Company's sales are driven by its four core product categories—hardlines, apparel, footwear, and other.

35.    Merchandise margin is one of Dick's Sporting Goods' key performance metrics for profitability.[3]  During the COVID-19 pandemic, social distancing measures and mandatory closures heavily impacted consumers' exercise and wellness routines.  Fueled by government stimulus checks, consumers increased spending on home fitness and outdoor recreational activities.  As a result, the Company's merchandise margin increased dramatically.

36.    In an aggressive attempt to capitalize on the unprecedented consumer demand, Dick's Sporting Goods stockpiled fitness and outdoor equipment.  Beginning in 2022, however, consumer demand for home fitness and outdoor recreational products declined as COVID-19 restrictions were lifted.  As a result, Dick's Sporting Goods faced an excess inventory issue, eventually forcing the Company to offload products at considerable markdowns.

37.    During this time, higher inventory shrinkage, due to increased theft, was also a growing issue for the retail industry.  In fact, in April 2023, the National Retail Federation released a report stating that increased theft resulted in $112.1 billion in losses reported in 2022, up from $93.9 billion in 2021.  Dick's Sporting Goods was losing millions of dollars each year to theft, materially impacting the Company's margins.

---

[3] Defined in the Company's Annual Report as net sales minus the cost of goods sold.

38.     Rather than alerting investors to the Company's growing inventory and theft issues, the Individual Defendants made a series of false and misleading statements conveying that its unprecedented growth and profits were sustainable, thereby keeping the Company's stock price at inflated levels.  As detailed below, the Insider Selling Defendants took advantage of these artificially inflated stock prices to sell nearly $39 million worth of their personally held stock. Further, despite awareness of these ongoing issues, the Director Defendants approved the Company repurchasing over $356 million of its own stock at inflated prices.

## IMPROPER STATEMENTS

**The Individual Defendants Misled the Public with False Assurances Concerning the Sustainability of its Profitability**

39.     As the public reopened with the receding severity of COVID-19, the Individual Defendants made a series of materially false and misleading statements concerning Dick's Sporting Goods' excess inventory and elevated shrinkage issues.  Rather than being transparent with the public, the Individual Defendants claimed that the Company's growth and profitability would remain sustainable beyond the pandemic.

40.     In particular, on March 7, 2023, Dick's Sporting Goods held an earnings call with analysts and investors to discuss its fiscal fourth quarter and full year 2022 financial results. Defendant Hobart began the call by touting the Company's performance in 2022, claiming that the results were due to supposed structural changes and initiatives.  However, the Company's financial results were compared to those of 2019, concealing the fact that margins had already begun to decline from the Company's performance during the pandemic.  In particular, defendant Hobart stated:

> We are very pleased with our 2022 results, which demonstrate the continued success strength of our business as we realize the benefits of our long-term transformation through focused strategies and strong execution.

*    *    *

Our merchandise margin increased more than 300 basis points. Our non-GAAP EBT margin more than doubled and our non-GAAP EPS is more than 3x higher than 2019. Our strong performance and financial strength position us to increase the rate of investment in our business to fuel long-term growth opportunities and also return significant capital to shareholders.

41.    Later in the call, defendant Gupta disclosed that, on a year-over-year basis, Dick's Sporting Goods' fourth-quarter merchandise margin had fallen by 640 basis points. Rather than warning investors of a regression in consumer spending, defendant Gupta represented that the decline was expected and attributable to the Company's promotional activities and a one-time initiative to clear out late-arriving seasonal products. While addressing the Company's inventory overages, defendant Gupta downplayed the issue, assuring investors that, "we continue to address targeted inventory overages due to the late arriving Sprint product. As a result of these actions, our inventory is in great shape as we start 2023."

42.    During the call, in response to an analyst's question about whether the Company's 2022 performance can serve as a baseline that the Company will not fall below going forward, defendant Hobart affirmed, "yes, our fiscal '22 level of merch margin is indeed a new baseline. We are planning to grow our merch margin going forward." Defendant Gupta reiterated that Dick's Sporting Goods' 2022 performance was the new baseline and further represented the sustainability of the Company's sales growth, stating, "like we have said 2022 is the new baseline foundation upon which we will grow our sales and earnings over the long term."

43.    These statements were sufficient to persuade analysts that the Company's setback was only temporary. For example, later that day, Barclays Capital Inc. published an article stating, "[p]romos during the quarter were well documented, even from our checks, but we believe were largely one-time in nature, and the GM impact is likely contained in 4Q22." Guggenheim

Securities, LLC also reported, "although DKS' 2H 2022 merchandise margin was up only 140-210 basis points over 2019 levels, we still see the potential for the company to retain 300-325 basis points of permanent gains on a go-forward basis now that inventory has been cleansed."

44.    On March 23, 2023, the Company filed its Annual Report on Form 10-K for the fiscal year ended January 28, 2023 (the "2022 Form 10-K"), with the SEC.  The 2022 Form 10-K, signed by defendants Hobart, Stack, Gupta, Colombo, Schorr, Chirico, Stone, Barrenechea, Fink, Fitzgerald, Mathrani, and Ralls-Morrison, highlighted significant increases in merchandise margins for 2022, crediting the success to the Company's increased efficiencies and strategic initiatives.  In particular, the 2022 Form 10-K reported:

> Our profitability is primarily influenced by growth in comparable store sales, the strength of our merchandise margins and ability to manage operating expenses.  In addition to the structurally higher sales compared to pre-COVID levels, our merchandise margins increased over 300 basis points as a percentage of net sales in fiscal 2022 as compared to fiscal 2019, as we've maintained the majority of the merchandise expansion that we drove over the prior two years with our differentiated product assortment, combined with our disciplined pricing strategy and favorable sales mix.  We've also experienced meaningful leverage on fixed occupancy costs and selling, general and administrative costs, due to the significant sales increase.

45.    On May 23, 2023, Dick's Sporting Goods held an earnings call with analysts and investors to discuss its fiscal first quarter of 2023.  During the earnings call, despite further declines in the Company's merchandise margin and gross margin, defendant Gupta continued to downplay the setbacks and claim they were expected.  In particular, defendant Gupta stated:

> As planned, this decline was driven by lower merchandise margin of 136 basis points due to the normalization of the pricing activity relative to Q1 of 2022 when our inventory was quite lean.  This was nearly offset by lower supply chain costs, which leveraged 108 basis points.

Regarding Dick's Sporting Goods' inventory position, defendant Hobart continued to represent that it was not an area of concern.  In particular, defendant Hobart stated:

So starting with inventories, *we are managing our inventory well.  Our inventory is clean.  It's well positioned*.  And I think what's very important for -- to realize is that our inventory and our products now are very narrowly distributed.  So we have more of a moat against any industry-level promotion that might have affected us in a -- time ago when there was just wide distribution of similar products.  So we are not expecting to have -- to go into a major promotional cycle here.  We're very proud and happy with the inventory levels that we have, and the assortment is a real asset here.

46.    In response to an analyst's inquiry about the sustainability of the Company's margin growth during COVID-19, defendant Gupta reiterated that the growth resulted from effective structural changes within the Company.  In particular, defendant Gupta stated:

*I would again reiterate what we have consistently said*.  First of all, it all goes back to having a very differentiated assortment, a differentiated assortment that is not only narrowly distributed but also is in really, really high demand when we look from the athletes.  So it goes first and foremost to that.

The second thing I would again reiterate is that we will continue to have a balanced approach to what is right for the athlete as well as what is right for the company.  We have always made the decisions that way, and we continue to believe that we will be able to act like that as we have guided today.

Providing further assurances regarding the Company's inventory management, defendant Hobart added:

Our value chain and Warehouse stores are a really great tool for us to clear out the product, be able to bring in fresh product to the DICK'S store but also make more product size runs, color runs available to the value-conscious consumer.  So we have a tool now that helps us manage through this significantly.

47.    Once again, defendants Hobart and Gupta convinced analysts about the sustainability of the Company's sales growth and profitability.  For example, on the following day, the Telsey Advisory Group reported:

While the merchandise margin was down 136 bps YoY in 1Q23, *much of the pressure seems transitory*.  This is due to normalized pricing versus last year and clearing select excess apparel inventory that retailers and brands, like Nike and adidas, have been keen to clear….  Overall, the company does not expect to enter a new cycle of increasing promotions in the near term, which, combined with falling

supply chain costs, is *expected to result in improvement to the merchandise margin over the course of 2023*.

48.    The statements referenced above were false and misleading when made because they failed to disclose that: (i) Dick's Sporting Goods was struggling with excess inventory that would need to be moved through clearances and significant markdowns, which would materially impact the Company's margins; (ii) increased shrinkage, related to retail theft, was materially affecting the Company's margins; and (iii) the Company failed to maintain proper internal controls.

## THE TRUTH EMERGES

49.    On August 22, 2023, the truth emerged when Dick's Sporting Goods issued a press release announcing its financial results for the second quarter ended July 29, 2023.  The press release reported figures that fell significantly lower than analyst consensus estimates.  According to the press release, the Company's gross margin was 34.4%, more than 5% below the analyst consensus estimate of 36.3%.  The press release also reported the Company's EPS to be $2.82, falling 26% short of the analyst consensus estimate of $3.81.

50.    That same day, Dick's Sporting Goods held an earnings call with analysts and investors to address the Company's disappointing fiscal second quarter 2023 financial results.  Just a few months after defendants Hobart and Gupta touted the Company's inventory position, defendant Gupta revealed that both shrinkage and promotional activities to clear excess product were the largest drivers of the decline.  Defendant Gupta also disclosed that these issues were expected to continue affecting the Company's margins through 2023.  In particular, defendant Gupta stated: "[t]his now includes an expectation of higher [shrinkage], which will reduce our full year gross margins by approximately 50 basis points compared to 2022 as well as our continued emphasis to keep our inventory vibrant and fresh."

51.    Despite defendant Gupta's efforts to downplay the impact of the Company's unfavorable results, analysts had now become keenly aware of its ongoing issues.  For example, later that day, D.A. Davidson & Co. reported that, "[m]anagement believes margins will rebase at this year's 10.2% level, which means margins improve in 2024.  We submit that this will need to be proven as that was also the thought relative to the original 2023 EBT guidance of 11.7%."  Additionally, Wells Fargo Securities, LLC voiced its doubts about the sustainability of Dick's Sporting Goods pandemic-fueled growth, stating, "[a]fter dodging reversion worries for the last 18 mo., we are beginning to see some softness in the model driven by a choppy consumer backdrop, elevated inventory in the channel (driving promos), along w/ the newest headwind: shrinkage."

52.    The following day, Oppenheimer & Co. Inc. released a report highlighting the Company's failure to effectively communicate its ongoing issues to its investors.  In particular, the report stated:

> ***In our view, management should have recognized sooner and telegraphed to investors more effectively both the need to write-down outdoor-related products and reserve more aggressively to elevated shrink***.  To a certain extent, DKS is now a "show me" story until management re-establishes credibility with investors.

53.    On this news, Dick's Sporting Goods' market capitalization plunged over 24%, or $35.51 per share, on August 22, 2023, to close at $111.53 per share compared to the previous trading day's closing of $147.04 per share, erasing $2.18 billion in market capitalization in a single day.

### DIRECTOR DEFENDANTS CAUSE DICK'S SPORTING GOODS TO REPURCHASE ITS OWN STOCK AT INFLATED PRICES

54.    Despite their knowledge, or reckless disregard for, the Company's issues concerning the sustainability of its sales and profitability, the Director Defendants approved four

substantial stock repurchases at artificially inflated prices. While the price of the Company's common stock was inflated due to the false and misleading statements made by the Individual Defendants, the Director Defendants caused Dick's Sporting Goods to repurchase 2,664,066 shares of its own common stock for a total of $356,127,669.

55.    On May 24, 2023, Dick's Sporting Goods filed its Quarterly Report on Form 10-Q for the fiscal first quarter of 2023 ended April 29, 2023, with the SEC. According to the Form 10-Q, the Company completed two stock repurchases between February 26, 2023 and April 29, 2023: (i) 807,379 shares of its common stock for $21,126,265, at an average price of $140.57 per share; and (ii) 276,209 shares of its common stock for $37,158,938, at an average price of $138.66 per share. However, the Company's stock was worth only $111.53 per share, the trading price at market close on August 22, 2023, after the truth emerged.

56.    On August 23, 2023, Dick's Sporting Goods filed its Quarterly Report on Form 10-Q for the fiscal second quarter of 2023 ended July 29, 2023, with the SEC. According to the Form 10-Q, the Company completed two stock repurchases between April 30, 2023 and July 1, 2023: (i) 1,066,917 shares of its common stock for $136,592,778, at an average price of $129.30 per share; and (ii) 513,561 shares of its common stock for $66,382,894, at an average price of $129.26 per share. However, the Company's stock was worth only $111.53 per share, the trading price at market close on August 22, 2023, after the truth emerged.

## INSIDER SALES BY INSIDER SELLING DEFENDANTS

57.    Rather than providing the market with correct information, the Insider Selling Defendants, used their knowledge of Dick's Sporting Goods material, nonpublic information to sell their personal holdings while the Company's stock was artificially inflated. As officers and

directors of Dick's Sporting Goods, defendants were privy to material, nonpublic information about the Company's true business health.

58.    While in possession of this knowledge, defendant Stack sold 159,461 shares of his personally held Company stock for proceeds of over $23 million, just months before the truth emerged.  Defendant Stack's sales were timed to maximize profit from Dick's Sporting Goods then artificially inflated stock price.

59.    While in possession of this knowledge, defendant Hobart sold 83,392 shares of her personally held Company stock for proceeds of over $12 million, just months before the truth emerged.  Defendant Hobart's sales were timed to maximize profit from Dick's Sporting Goods then artificially inflated stock price.

60.    While in possession of this knowledge, defendant Gupta sold 14,294 shares of his personally held Company stock for proceeds of nearly $2 million, just months before the truth emerged.  Defendant Gupta's sales were timed to maximize profit from Dick's Sporting Goods then artificially inflated stock price.

61.    While in possession of this knowledge, defendant Barrenechea sold 9,085 shares of his personally held Company stock for proceeds of over $1 million, just months before the truth emerged.  Defendant Barrenechea's sales were timed to maximize profit from Dick's Sporting Goods then artificially inflated stock price.

62.    While in possession of this knowledge, defendant Fink sold 3,174 shares of her personally held Company stock for proceeds of over $441,451, just months before the truth emerged.  Defendant Fink's sales were timed to maximize profit from Dick's Sporting Goods then artificially inflated stock price.

63.    In sum, the Insider Selling Defendants sold nearly $39 million worth of stock at artificially inflated prices as detailed in the table below:

| Sales Period: August 23, 2022 - August 21, 2023 | | | | |
|---|---|---|---|---|
| Insider Last Name | Transaction Date | Shares | Price | Proceeds |
| STACK | 3/13/2023 | 123,467 | $144.19 | $17,802,706.73 |
| Current Executive Chairman and a Director | 3/13/2023 | 35,994 | $145.05 | $5,220,929.70 |
| Total: | | 159,461 | | $23,023,636.43 |
| | | | | |
| HOBART Current President, CEO, and a Director | 3/13/2023 | 83,392 | $145.21 | $12,109,610.84 |
| Total: | | 83,392 | | $12,109,610.84 |
| | | | | |
| GUPTA | 6/7/2023 | 6,133 | $137.25 | $841,776.33 |
| Current Executive Vice President, Chief Financial Officer | 6/7/2023 | 1,526 | $136.12 | $207,716.22 |
| | 6/7/2023 | 6,635 | $135.34 | $897,955.69 |
| Total: | | 14,294 | | $1,947,448.24 |
| | | | | |
| BARRENECHEA Current Director | 5/25/2023 | 9,085 | $123.54 | $1,122,360.90 |
| Total: | | 9,085 | | $1,122,360.90 |
| | | | | |
| FINK Current Director | 4/6/2023 | 3,174 | $139.08 | $441,451.35 |
| Total: | | 3,174 | | $441,451.35 |
| | | | | |
| | | | | |
| Total: | | 269,406 | | $38,644,507.75 |

## DAMAGES TO DICK'S SPORTING GOODS

64.    As a result of the Individual Defendants' improprieties, Dick's Sporting Goods disseminated improper, public statements concerning its growth and profitability. These improper statements have devastated Dick's Sporting Goods' credibility as reflected by the Company's $2.2 billion, or 25%, market capitalization loss.

65.    Dick's Sporting Goods' performance issues also damaged its reputation within the business community and in the capital markets. In addition to price, Dick's Sporting Goods' current and potential customers consider a company's ability to accurately value its business prospects and evaluate sales and growth potential. Investors are less likely to invest in companies that fail to disclose material information in a timely manner. Additionally, Dick's Sporting Goods' ability to raise equity capital or debt on favorable terms in the future is now impaired. Furthermore, the Company stands to incur higher marginal costs of capital and debt because the improper statements and misleading projections disseminated by the Individual Defendants have materially increased the perceived risks of investing in and lending money to the Company.

66.    Further, as a direct and proximate result of the Individual Defendants' actions, Dick's Sporting Goods has expended, and will continue to expend, significant sums of money. Such expenditures include, but are not limited to:

(a)    costs incurred from investigating and defending Dick's Sporting Goods and certain officers and directors in the Securities Class Action for violations of federal securities laws;

(b)    costs expended to correct the Company's inadequate internal controls over financial reporting;

(c)    excessive sums paid to repurchase Company common stock;

(d)    costs incurred from settlements or to satisfy adverse judgments;

(e)    costs incurred from storing greater amounts of excess inventory; and

(f)    costs incurred from compensation and benefits paid to the defendants who have breached their duties to Dick's Sporting Goods.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

67.     Plaintiff brings this action derivatively in the right and for the benefit of Dick's Sporting Goods to redress injuries suffered, and to be suffered, by Dick's Sporting Goods as a direct result of violations of securities law, breaches of fiduciary duty, and unjust enrichment, by the Individual Defendants.  Dick's Sporting Goods is named as a nominal defendant solely in a derivative capacity.

68.     Plaintiff will adequately and fairly represent the interests of Dick's Sporting Goods in enforcing and prosecuting its rights.

69.     Plaintiff was a stockholder of Dick's Sporting Goods at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current Dick's Sporting Goods stockholder.

70.     The current Board of Dick's Sporting Goods consists of the following twelve individuals: defendants Hobart, Stack, Colombo, Schorr, Chirico, Stone, Barrenechea, Fink, Fitzgerald, Mathrani, Ralls-Morrison, and non-defendant Robert W. Eddy.  Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

**Demand Is Excused Because Defendants Hobart, Stack, Colombo, Schorr, Chirico, Stone, Barrenechea, Fink, Fitzgerald, Mathrani, and Ralls-Morrison Face a Substantial Likelihood of Liability for Their Misconduct**

71.     As alleged above, defendants Hobart, Stack, Colombo, Schorr, Chirico, Stone, Barrenechea, Fink, Fitzgerald, Mathrani, and Ralls-Morrison breached their fiduciary duties of loyalty by making improper statements in Dick's Sporting Goods' press releases and SEC filings regarding the sustainability of the Company's growth and profitability.

72.     Additionally, defendants Hobart, Stack, Colombo, Schorr, Chirico, Stone, Barrenechea, Fink, Fitzgerald, Mathrani, and Ralls-Morrison, caused or approved of the

Company's repurchase over $356 million of its stock at artificially inflated prices. Thus, defendants Hobart, Stack, Colombo, Schorr, Chirico, Stone, Barrenechea, Fink, Fitzgerald, Mathrani, and Ralls-Morrison face a substantial likelihood of liability for their breaches of fiduciary duties and violations of securities law.

**Additional Reasons Why Demand on Defendants Chirico, Barrenechea, Fink, Mathrani, and Ralls-Morrison Is Futile**

73. Defendants Chirico, Barrenechea, Fink, Mathrani and Ralls-Morrison, as members of the Audit Committee, reviewed and approved the improper statements and earnings guidance. The Audit Committee's Charter provides that it is responsible for the oversight of "quality financial reporting, accounting policies, internal controls, risk and compliance management, and independent and objective outside auditors." Thus, the Audit Committee Defendants were responsible for knowingly or recklessly allowing the improper statements related to the Company's earnings guidance and financial and disclosure controls. Moreover, the Audit Committee Defendants reviewed and approved the improper press releases made to the public. Despite their knowledge or reckless disregard, the Audit Committee Defendants caused these improper statements. Accordingly, the Audit Committee Defendants breached their fiduciary duty of loyalty because they participated in the wrongdoing described herein. Thus, the Audit Committee Defendants face a substantial likelihood of liability for their breach of fiduciary duties so any demand upon them is futile.

**Additional Reasons Why Demand on Defendants Hobart Is Futile**

74. Defendant Hobart sold Dick's Sporting Goods stock under highly suspicious circumstances. Defendant Hobart as President and CEO, possessed material, nonpublic Company information and used that information to benefit herself. Defendant Hobart sold stock based on this knowledge of material, nonpublic Company information regarding the Company's

unsustainable sales and profitability and the impending decrease in the value of their holdings of Dick's Sporting Goods. Accordingly, defendant Hobart faces a substantial likelihood of liability for breach of her fiduciary duty of loyalty.

75.    Any suit by the current directors of Dick's Sporting Goods to remedy these wrongs would expose defendant Hobart's liability for violations of the federal securities laws in the pending Securities Class Action. The Securities Class Action alleges violations of Sections 10(b) and 20(a) of the Exchange Act. If the Board elects for the Company to press forward with its right of action against defendant Hobart in this action, then the Company's efforts would compromise its defense of the Securities Class Action.

76.    The principal professional occupation of defendant Hobart is her employment with Company, pursuant to which she has received and continues to receive substantial monetary compensation and other benefits as alleged above. Accordingly, defendant Hobart lacks independence from defendants Stack, Colombo, Schorr, Chirico, Stone, Barrenechea, Fink, Fitzgerald, Mathrani, and Ralls-Morrison due to her interest in maintaining her executive position at Dick's Sporting Goods. This lack of independence renders defendant Hobart incapable of impartially considering a demand to commence and vigorously prosecute this action. Dick's Sporting Goods paid defendant Hobart the following compensation:

| Year | Salary | Stock Awards | Non-Equity Incentive Plan | Change in Pension & Nonqualified Deferred Comp | All Other Compensation | Total |
|---|---|---|---|---|---|---|
| 2023 | $1,305,769 | $9,750,307 | $2,285,096 | $200,000 | $34,054 | $13,575,226 |
| 2022 | $1,180,769 | $5,000,142 | $2,066,346 | $165,000 | $22,109 | $8,434,366 |

Accordingly, defendant Hobart is incapable of impartially considering a demand to commence and vigorously prosecute this action because she has an interest in maintaining her principal occupation

and the substantial compensation she receives in connection with that occupation. Demand is futile as to defendant Hobart.

**Additional Reasons Why Demand on Defendant Stack Is Futile**

77.    When defendant Stack assumed control over Dick's Sporting Goods in 1984, the Company operated only two locations. Over the years, defendant Stack transformed the Company into a nationwide presence, now with over 800 locations. As Executive Chairman, defendant Stack holds responsibility over Dick's Sporting Goods' operations and is presumed to exert significant influence over the Company's business and operating practices. Defendant Stack's long-standing involvement with the Company further underscores his control over its operations.

78.    Defendant Stack sold Dick's Sporting Goods stock under highly suspicious circumstances. Defendant Stack as Executive Chairman, possessed material, nonpublic Company information and used that information to benefit himself. Defendant Stack sold stock based on this knowledge of material, nonpublic Company information regarding the Company's unsustainable sales and profitability and the impending decrease in the value of their holdings of Dick's Sporting Goods. Accordingly, defendant Stack faces a substantial likelihood of liability for breach of his fiduciary duty of loyalty.

79.    Any suit by the current directors of Dick's Sporting Goods to remedy these wrongs would expose defendant Stack to liability for violations of the federal securities laws in the pending Securities Class Action. The Securities Class Action alleges violations of Sections 10(b) and 20(a) of the Exchange Act. If the Board elects for the Company to press forward with its right of action against defendant Stack in this action, then Company's efforts would compromise its defense of the Securities Class Action.

80.    The principal professional occupation of defendant Stack is his employment with Company, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits as alleged above.  Accordingly, defendant Stack lacks independence from defendants Hobart, Colombo, Schorr, Chirico, Stone, Barrenechea, Fink, Fitzgerald, Mathrani, and Ralls-Morrison due to his interest in maintaining his executive position at Dick's Sporting Goods.  This lack of independence renders defendant Stack incapable of impartially considering a demand to commence and vigorously prosecute this action.  Dick's Sporting Goods paid defendant Stack the following compensation:

| Year | Salary | Stock Awards | Non-Equity Incentive Plan | Change in Pension & Nonqualified Deferred Comp | All Other Compensation | Total |
|------|--------|--------------|---------------------------|-----------------------------------------------|------------------------|-------|
| 2023 | $1,223,077 | $11,500,305 | $2,568,462 | $60,000 | $204,878 | $15,556,722 |
| 2022 | $1,180,769 | $7,500,112 | $2,479,615 | - | $89,106 | $11,249,602 |

Accordingly, defendant Stack is incapable of impartially considering a demand to commence and vigorously prosecute this action because he has an interest in maintaining his principal occupation and the substantial compensation he receives in connection with that occupation.  Demand is futile as to defendant Stack.

**Additional Reasons Why Demand on Defendants Barrenechea and Fink Is Futile**

81.    Defendants Barrenechea and Fink sold Dick's Sporting Goods stock under highly suspicious circumstances.  Defendants Barrenechea and Fink, as members of the Company's Board, possessed material, nonpublic Company information and used that information to benefit themselves.  Defendants Barrenechea and Fink sold stock based on this knowledge of material, nonpublic Company information regarding the Company's unsustainable sales and profitability and the impending decrease in the value of their holdings of Dick's Sporting Goods.  Accordingly,

defendants Barrenechea and Fink face a substantial likelihood of liability for breaching their fiduciary duty of loyalty. Any demand upon defendants Barrenechea and Fink is futile.

## COUNT I

### Against the Individual Defendants for Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder

82.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

83.    During the period of wrongdoing, the Individual Defendants disseminated or approved false or misleading statements about Dick's Sporting Goods, which they knew or recklessly disregarded were false or misleading and were intended to deceive, manipulate, or defraud. Those false or misleading statements and defendants' course of conduct artificially inflated the price of the Company's common stock.

84.    While the price of the Company's common stock was inflated due to the false and misleading statements made by the Individual Defendants, the Director Defendants caused the Company to repurchase shares of its own common stock at prices that were artificially inflated due to the defendants' false or misleading statements. The Director Defendants engaged in a scheme to defraud Dick's Sporting Goods by causing the Company to repurchase $356,127,669 in shares of its own stock at artificially inflated prices.

85.    The Individual Defendants violated section 10(b) of the Exchange Act and SEC Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (iii) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Dick's

Sporting Goods in connection with the Company's repurchases of its own stock during the period of wrongdoing.

86.    The Individual Defendants, individually and collectively, directly and indirectly, by the use of means or instrumentalities of interstate commerce or of the mail: (i) engaged and participated in a continuous course of conduct that operated as a fraud and deceit upon the Company; (ii) made various false or misleading statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; (iii) made the above statements intentionally or with a severely reckless disregard for the truth; and (iv) employed devices, and artifices to defraud in connection with the purchase and sale of Dick's Sporting Goods stock, which were intended to, and did: (a) deceive Dick's Sporting Goods and its stockholders regarding, among other things, the Company's ongoing issues with its inventory and shrinkage; (b) artificially inflate and maintain the market price of Dick's Sporting Goods stock; and (c) cause Dick's Sporting Goods to repurchase the Company's stock at artificially inflated prices and suffer losses when the true facts became known.  Throughout the period of wrongdoing, the defendants were in possession of material, nonpublic information regarding the above.

87.    The Individual Defendants were among the senior management and the directors of the Company, and were therefore directly responsible for, and are liable for, all improper statements made during the period of wrongdoing, as alleged above.

88.    The Individual Defendants acted with scienter throughout the period of wrongdoing, in that they acted either with intent to deceive, manipulate, or defraud, or with severe recklessness.  The misstatements and omissions of material facts set forth in this Complaint were either known to the Individual Defendants or were so obvious that the defendants should have been

aware of them.  Throughout the period of wrongdoing, the defendants also had a duty to disclose new information that came to their attention and rendered their prior statements to the market materially false or misleading.

89.    The Individual Defendants' false or misleading statements and omissions were made in connection with the repurchase of Dick's Sporting Goods' stock by the Company.

90.    As a result of the Individual Defendants' misconduct, Dick's Sporting Goods has and will suffer damages in that it paid artificially inflated prices for its own common stock and suffered losses when the previously undisclosed facts relating to the wrongdoing was disclosed.

91.    Dick's Sporting Goods would not have purchased these securities at the prices it paid, or at all, but for the artificial inflation in the Company's stock price caused by the Individual Defendants' false or misleading statements.

92.    As a direct and proximate result of the Individual Defendants' wrongful conduct, the Company suffered damages in connection with the repurchases of Dick's Sporting Goods stock during the period of wrongdoing.  By reason of such conduct, the Individual Defendants are liable to the Company pursuant to section 10(b) of the Exchange Act and SEC Rule 10b-5.

## COUNT II

### Against the Individual Defendants for Breach of Fiduciary Duty

93.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

94.    The Individual Defendants owed and owe Dick's Sporting Goods fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe Dick's Sporting Goods the highest obligation of care and loyalty.

95.    The Individual Defendants and each of them, violated and breached their fiduciary duties.

96.    The Officer Defendants either knew, were reckless, or were grossly negligent in disregarding the misconduct of such substantial magnitude and duration.  The Officer Defendants either knew, were reckless, or were grossly negligent in not knowing Dick's Sporting Goods was releasing materially false and misleading information to the public.  Accordingly, the Officer Defendants breached their duty of care and loyalty to the Company.

97.    The Director Defendants, as directors of the Company, owed Dick's Sporting Goods the highest duty of loyalty.  These defendants breached their duty of loyalty through their failure to: (i) provide truthful and accurate statements regarding the sustainability of the Company's growth and profitability; (ii) prevent the Company from engaging in several substantial repurchases of its own common stock at artificially inflated prices; and (iii) implement and maintain adequate internal controls over financial reporting.  Accordingly, these defendants breached their duty of loyalty to the Company.

98.    The Audit Committee Defendants breached their fiduciary duty of loyalty by approving the statements described herein which were made during their tenure on the Audit Committee, which they knew or were reckless in not knowing contained improper statements and omissions.  The Audit Committee Defendants completely and utterly failed in their duty of oversight, and failed in their duty to appropriately review financial results, as required by the Audit Committee Charter in effect at the time.

99.    The Insider Selling Defendants breached their duty of loyalty by selling Dick's Sporting Goods stock on the basis of the knowledge of the improper information described above before that information was revealed to the Company's stockholders.  The information described

above was material, nonpublic information concerning the Company's future business prospects. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Dick's Sporting Goods common stock.

100.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Dick's Sporting Goods has sustained significant damages, as alleged herein. As a result of the misconduct alleged herein, these defendants are liable to the Company.

101.    Plaintiff, on behalf of Dick's Sporting Goods, has no adequate remedy at law.

<u>**COUNT III**</u>

**Against the Individual Defendants for Unjust Enrichment**

102.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

103.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Dick's Sporting Goods.  The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to Dick's Sporting Goods.

104.    The Insider Selling Defendants sold Sporting Goods stock while in possession of material, nonpublic information that artificially inflated the price of Dick's Sporting Goods stock. As a result, the Insider Selling Defendants profited from their misconduct and were unjustly enriched through their exploitation of material and adverse inside information.

105.    Plaintiff, as a stockholder and representative of Dick's Sporting Goods, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

106.    Plaintiff, on behalf of Dick's Sporting Goods, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Dick's Sporting Goods, demands judgment as follows:

A.    Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' violations of securities law, breaches of fiduciary duties, and unjust enrichment;

B.    Directing Dick's Sporting Goods to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Dick's Sporting Goods and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.    a proposal to strengthen the Board's supervision of operations;

2.    a proposal to strengthen the Dick's Sporting Goods oversight of stock repurchases;

3.    a proposal to strengthen the Company's controls over financial reporting;

4.    a provision to control insider selling and claw back profits in the event improper insider selling is discovered;

5.    a proposal to strengthen Dick's Sporting Goods' oversight of its disclosure procedures;

6.      a proposal to develop and implement procedures for greater stockholder input into the policies and guidelines of the Board; and

7.      a provision to permit the stockholders of Dick's Sporting Goods to nominate at least three candidates for election to the Board;

C.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Dick's Sporting Goods has an effective remedy;

D.      Awarding to Dick's Sporting Goods restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants, including all ill-gotten gains from insider selling by defendants;

E.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: February 13, 2025                    **PRIBANIC & PRIBANIC**

/s/ Vincent A. Coppola
Vincent A. Coppola (PA 17419)
513 Court Place
Pittsburgh, PA 15219
Telephone: (412) 735-6490
Facsimile: (412) 281-4740
E-mail: yateslaw@aol.com

ROBBINS LLP
Brian J. Robbins
Stephen J. Oddo

Michael J. Nicoud
5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com
        soddo@robbinsllp.com
        mnicoud@robbinsllp.com

Attorneys for Plaintiff

1684842